UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JAMES RANDALL UPSHAW, JO SMALL UPSHAW, EDDIE LOUIS UPSHAW, AND PEI SAH LEE UPSHAW | CIVIL ACTION NO. 3:20-CV-00227 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| SWN PRODUCTION COMPANY, LLC AND VELANDERA ENERGY PARTNERS, LLC | MAG. JUDGE KAREN L. HAYES |

**RULING**

Pending here are three Motions for Summary Judgment, all hinging on the same legal issues. The first is a Motion for Summary Judgment filed by Defendant SWN Production Company, LLC, ("SWN") [Doc. No. 14]. Plaintiffs James Randall Upshaw, Jo Small Upshaw, Eddie Louis Upshaw, and Pei Sah Lee Upshaw (collectively, "Plaintiffs") have filed an opposition [Doc. No. 18]. Defendant Velandera Energy Partners, LLC, ("VEP") has also filed an opposition [Doc. No. 20]. SWN has filed a reply to the oppositions [Doc. No. 24].

The second is a Motion for Partial Summary Judgment filed by Plaintiffs [Doc. No. 19]. SWN has filed an opposition [Doc. No. 26]. VEP has filed an opposition [Doc. No. 28].

The third is a Motion for Summary Judgment filed by VEP [Doc. No. 21]. Plaintiffs have filed an opposition [Doc. No. 25]. SWN has filed an opposition [Doc. No. 27]. VEP has filed a reply to the oppositions [Doc. No. 29].

For the following reasons, the Motion for Summary Judgment filed by SWN [Doc. No. 14] is DENIED, and the Motion for Partial Summary Judgment filed by Plaintiffs [Doc. No. 19] and the Motion for Summary Judgment filed by VEP [Doc. No. 21] are GRANTED.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs are the owners of property in Union Parish, Louisiana. They executed oil and gas leases on the property in favor of SWN which had an effective date of July 17, 2012 (the "2012 Leases"). The 2012 Leases were "paid-up" leases and had a three (3) year primary term.

During the period from March 11, 2013, through April 2, 2013, SWN constructed a well pad and an access road on the property in anticipation of oil and gas activities thereon. On or about April 5, 2013, SWN had an 8' by 8' cellar drilled out on the well pad, as well as an 80-foot conductor hole and a 90-foot rotating mouse hole drilled for potential operations on the property. Despite these preparations, no further drilling operations have been conducted on the property.

The described operations were performed under a Permit to Drill for Minerals issued by the Office of Conservation of the State of Louisiana with an approval date of March 5, 2013, and an expiration date of August 31, 2013. [Doc. No. 21-9].

The 2012 Leases contained restoration clauses with specific activation periods and which included a provision that, if a hole was drilled which was not productive of oil and gas, the restoration of the property would take place within six months of the determination that the hole was not capable of production. The 2012 Leases did not contain any extension option or other method to extend the primary term of the leases other than the active production of oil and gas attributable to the property.

Plaintiffs made demands for restoration to SWN under the 2012 Leases on or about April 16, 2015, [Doc. No. 21-10], but SWN did not comply with those demands. However, SWN admitted by letter dated April 30, 2015, that under the provisions of the 2012 Lease ASWN is

obligated to restore any property to the condition in which it was prior to any operations conducted by SWN.@ [Doc. No. 21-11]. SWN refused restoration at that time, stating that its obligation to restore did not arise until the expiration of the lease. [*Id*.].

Plaintiffs entered into subsequent leases with SWN which were dated effective July 17, 2015, but which were not actually signed by the parties until October 28, 2015, or recorded in the public records of Union Parish, Louisiana until January 13, 2016 (the "2015 Leases"). The 2015 Leases contained many of the same provisions as the 2012 Leases and were also paid up mineral leases with a three-year primary term.

Significant to this litigation, the 2015 Leases had a provision that "[t]he rights and estate of any party hereto may be assigned . . . in whole or in part," and that "[i]f Lessee transfers its interests hereunder, in whole or in part, Lessee shall be relieved of all obligations thereafter arising with respect to the transferred interest." [Doc. No. 14-10, at ¶ 10].

SWN did not perform any additional drilling operations on the subject property during the term of the 2015 Leases, and they expired under their terms on July 16 or 17, 2018.

However, on July 12, 2018, and effective December 1, 2017, Defendants SWN and VEP entered into an Assignment and Bill of Sale, which assigned SWN's interest in the 2015 Leases.

Plaintiffs filed this suit against SWN and VEP on January 6, 2020, in the Third Judicial District Court for Union Parish, Louisiana. SWN removed the case to this Court on February 19, 2020 [Doc. No.1]. Plaintiffs claim that SWN and VEP failed to perform their obligations under the leases to restore the surface of their property and to remove the materials placed on their property by SWN and are, therefore, liable for damages.

SWN, Plaintiffs, and VEP have all filed motions for summary judgment. SWN argues that Plaintiffs' claims against it should be denied because it had no obligation to restore Plaintiffs'

3

property under the plain language of the 2012 Leases. SWN also argues that the 2012 Leases did not expire until July 17, 2015, and that the 2015 Leases with an effective date of that same date, July 17, 2015, were intended by the parties to replace or novate the 2012 Leases. SWN argues further that, under the express terms of the 2015 Leases, Plaintiffs agreed that SWN had a right to assign its interests in the 2015 Leases and, in the event of such an assignment, Plaintiffs agreed to release SWN from its obligations under the Leases. SWN concludes that Plaintiffs have no claim against it, and that Plaintiffs' only viable claim is against VEP, the assignee of the 2015 Leases.

Plaintiffs contend that they are entitled to summary judgment against SWN on the issue of liability. Plaintiffs assert that the 2015 Leases did not replace the 2012 Leases, which they argue expired on July 16, 2015, the day before the effective date of the 2015 Leases. Since the 2012 Leases were already expired, they were not subject to replacement. Plaintiffs further argue that, although SWN refers to language in the 2015 Leases providing that "[i]f Lessee transfers its interests hereunder ... Lessee shall be relieved of all obligations thereafter arising with respect to the transferred interest," the obligation for SWN to restore the property arose at the expiration of the 2012 Leases. Thus, the restoration obligation for SWN had already arisen and was not an "obligation [] thereafter arising" that would have been extinguished upon assignment of the 2015 Leases to VEP. Therefore, regardless of the Assignment of the 2015 Leases to VEP, SWN remains obligated to restore the property, including removal of the road and well pad.

Plaintiffs additionally submit that they did not otherwise consent to the extinguishment of SWN's restoration obligation upon assignment of the leases to VEP, and, thus, Plaintiffs are entitled to summary judgment against SWN for that reason also. Plaintiffs have not moved for summary judgment against VEP.

4

VEP seeks summary judgment denying Plaintiffs' claims against it. VEP argues that all restoration obligations arise out of the 2012 Leases, which are the sole responsibility of SWN, and all arose prior to the alleged 2018 assignment of the 2015 Leases to VEP. VEP also disputes SWN's contention that the 2012 Leases were replaced or novated by the 2015 Leases. VEP concludes that it is entitled to summary judgment that it has no liability arising out of the 2012 Leases to Plaintiffs.

Plaintiffs oppose VEP's motion on the grounds that, should this Court find that the assignment to VEP *did* extinguish SWN's restoration obligation, then VEP has the obligation to restore the property.

The motions are fully briefed, and the Court is prepared to rule.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), A[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@ "Summary judgment is always appropriate 'where the only issue before the court is a pure question of law.' " *J & L Family, L.L.C. v. BHP Billiton Petroleum Props. ( N.A.), L.P*, 293 F.Supp.3d 615, 619 (W.D. La. 2018), quoting "*Sheline v. Dun & Bradstreet Corp*., 948 F.2d 174, 176 (5th Cir. 1991)." The issue before the Court, a landowner's entitlement to compensation for property appropriated for levee purposes under Louisiana law (or the Fifth Amendment) "presents only a question of law." *South Lafourche Levee District v. Jarreau*, 16-788 (La. 3/31/17), 217 So.3d 298, 305, *cert. denied*, 138 S. Ct. 381, 199 L. Ed. 2d 279 (2017) (hereafter "*SLLD*").

5

Where the nonmovant will bear the burden of proof at trial, "[t]he moving party may meet its burden [on summary judgment] to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the nonmovant cannot "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, the entry of summary judgment is appropriate." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(B).

**B.  Analysis**

The resolution of all three pending motions for summary judgment hinges on three issues: (1) whether SWN is obligated under the plain language of the 2012 Leases to restore Plaintiffs' property, (2) whether the 2015 Leases novated SWN's obligation to restore the Plaintiffs' property under the 2012 Leases, and (3) whether the Assignment operated to transfer SWN's obligation to restore Plaintiffs property to VEP. The Court will discuss each issue in turn.

**1.  Did the 2012 Leases obligate SWN to restore the property?**

SWN argues that it had no obligation to restore Plaintiffs' property under the plain language of the 2012 Leases. Paragraph 22 of the 2012 Leases says: "Lessee also agrees that within six (6) months of completion of drilling a hole on said lands, and such hole, has [been] determined to have no production value,. . . (iv) [it shall] remov[e] any materials used on the location site, such as, but not limited to, rocks, gravel, boards, lumber, or any other material not naturally found at the surface of said lands." [Doc. No. 21-6, pp. 2-3, 7-8]. While Plaintiffs and VEP contend that SWN was obligated to restore the property within six months of drilling a cellar, conductor hole, and mouse hole, SWN argues that the other parties omit a critical section of the paragraph on which they rely: No restoration obligation arose until six months after the "hole[s] [were] determined to

have no production value." SWN submits that there is no evidence that SWN or anyone else determined that the holes had no production value. Further, there is no way to determine whether a hole has production value without completing a well, and SWN, for whatever reason, undisputedly did not drill a well at this location. SWN further asserts that the lapse of a drilling permit does not constitute a determination that the holes had no production value.

VEP responds that SWN's argument is not in conformity with the clear language of Paragraph 22, particularly as amended. Paragraph 22, as originally executed, stated:

> 22.... Lessee also agrees that within six (6) months of completion of drilling a hole on said lands, and such hole, has been determined to have no production value (commonly referred to as a '*dry hole'*), (i) such *well bore* shall be abandoned and plugged, according to state laws; (ii) to remove all foreign materials from said lands, (iii) to pump out and remove from said lands all fluids from any pits, whether lined (with any natural and/or synthetic material) or unlined, located on the said lands; (iv) the removal of any materials used on the location site, such as, but not limited to , rocks, gravel, boards, lumber, or any other material not naturally found at the surface of said lands; (v) the restoration of said lands to the natural slope; (vi) and the replanting of any crops or timber to said lands that was destroyed/removed during any operation conducted by the Lessee or parties acting on their behalf.

[Doc. No. 21-4, pp. 6 and 13] (emphasis added).

In April 2014, the 2012 Leases were amended because, in addition to other items, Paragraph 22 as originally executed "was unclear as to exact clean-up provisions of surface property being used for production purposes; ...". [Doc. No. 21-6 at pp. 2 and 7, Whereas Paragraph 2]. The amended Paragraph 22 provided in pertinent part:

> 22.... Lessee also agrees that within six (6) months of completion of drilling a hole on said lands, and such hole, has been determined to have no production value, (i) such *hole* shall be abandoned and plugged, according to state laws; ...

(emphasis added).

Thus, in the 2012 Leases as amended, the only requirement with regard to the restoration requirement is that a "hole" be completed, six months has passed, and that the hole have no production value. There is no requirement that a well be drilled, only that a hole be drilled. The amendment removed any reference to a "dry hole" or a "well bore", making the only reference point the drilling of a hole. VEP submits that, considering the property had been sitting for a year at the time of the amendment with two holes on the property, this change in language is telling.

VEP submits that, as shown by the contractors' invoices [Doc. Nos. 21-7 and 21-8], the holes were completed no later than April 5, 2013, and, further, that SWN does not dispute that there is no evidence of any additional drilling or operational activity by SWN after that date. VEP argues that there is no question that an eighty-foot hole or a ninety-foot hole has no capability of producing oil or gas. Additionally, SWN's only drilling permit, which was obtained in order to drill the holes described, expired under its own terms on August 31, 2013. [Doc. No. 21-9]. No additional permits to drill were ever sought by SWN. [*See* Response to Request for Admission No. 15, Doc. No. 21-15].

VEP argues that SWN's interpretation of the language of Paragraph 22, either in its original form or its amended form, that no determination of the production value of the holes could be determined until the drilling of an actual well, has no basis in fact and is not contained in the language of the 2012 Leases. The clarification of Paragraph 22 clearly shows that the drilling of a well was not required, only the drilling of a hole. The language of the 2012 Leases is clear and explicit, and SWN's interpretation of Paragraph 22 attempts to add elements to Paragraph 22 that don't exist, which is contrary to Louisiana law.

VEP additionally asserts that SWN's argument becomes even less persuasive when it is considered that no operations and no hole were drilled on the Plaintiffs' property during the

pendency of the 2015 Leases. All of the activity was conducted well before the expiration of the 2012 Leases, and no operations requiring restoration were performed during the 2015 Leases, which could be "assigned" by SWN to VEP.

The Court finds that, regardless of whether the 2012 Leases expired on July 16, 2015, or July 17, 2015, SWN's obligation to restore the property arose during the term of the 2012 Leases. As with any contract, a mineral lease is the law between the parties and regulates their respective rights and obligations. *Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co.*, (La. App. 2 Cir. 3/23/11), 63 So. 3d 159, 167; *see also Guy v. Empress*, *L.L.C.,* (La. App. 2 Cir. 4/8/16), 193 So. 3d 177, 182 n.12 (same). The general rules of contract interpretation apply when interpreting contracts involving mineral rights. *Hoover Tree Farm, LLC*, 63 So. 3d at 167. "Interpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE art 2045. "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed." *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, (La.3/19/13), 112 So. 3d 187, 192 (citing *Prejean v. Guillory*, (La.7/2/10), 38 So. 3d 274, 279). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation maybe made in search of the parties' intent." *Id.*, (*quoting* LA. CIV. CODE art. 2046).

The language of Paragraph 22, particularly as amended, makes it clear that SWN's obligation to restore Plaintiffs' property became a fixed obligation prior to the expiration of the 2012 Leases. The amendment removed any reference to a "dry hole" or a "well bore," making the only reference point the drilling of a "hole." The holes were completed no later than April 5, 2013, and there is no evidence of any additional drilling or operational activity by SWN after that date. SWN does not challenge VEP's contention that an eighty-foot hole or a ninety-foot hole has no capability of producing oil or gas. SWN's only drilling permit, which was obtained in order to drill

9

the holes described, expired under its own terms on August 31, 2013. [Doc. No. 21-9]. No additional permits to drill were ever sought by SWN.

SWN argues that there is no evidence that SWN or anyone else determined that the holes had no production value. SWN states, "Indeed, there is no way to determine whether a hole has production value without completing a well, and SWN, for whatever reason, undisputedly did not drill a well at this location. [Doc. No. 27, p. 2-3]. Under SWN's theory, then, SWN would never become obligated to restore the property until someone paid for the completion of a well. That could not have been the intent of the parties.

SWN even admitted in its letter to Plaintiffs, dated April 30, 2015, prior to the expiration of the 2012 Leases, that "SWN is obligated to restore any property to the condition in which it was prior to any operations conducted by SWN." [Doc. No. 21-11].

It is also of note that the 2015 Leases were not executed until late October 2015, over three months after the expiration of the 2012 Leases. Thus, by any interpretation, the obligation to restore the property was already due and owing at the time of the execution of the 2015 Leases.

For these reasons, the Court concludes that SWN is obligated under the 2012 Leases to restore the property. The Court will next consider SWN's argument that the 2015 Leases novated SWN's obligation to restore the Plaintiffs' property under the 2012 Leases.

        **2.    Were the 2015 Leases novations of the 2012 Leases?**

SWN asserts that there is an additional and independent reason why it is not liable for restoration of Plaintiffs' property. Even if SWN's restoration obligation arose during the term of the 2012 Leases, that obligation was extinguished by the 2015 Leases, which effected a novation of the 2012 Leases. SWN submits that, here, the 2015 Leases expressly declare that they "replace[ ] any lease with this Lessee on the said property." [Doc. No. 14-2 at pp. 9, ¶ 32, & 18, ¶ 32]. Thus,

according to SWN, the 2015 Leases were plainly meant to replace the 2012 Leases: the latter expired on the July 17, 2015, the same day the former went into effect; the Leases were between the same lessors and lessee; they were for the same purpose; and they covered the same property.

Citing *Rebel Distributors. Corp., Inc. v. LUBA Workers' Comp.*, (La. 10/15/13), 144 So. 3d 825, 831, 840, SWN argues that the only reasonable conclusion is that the 2015 Leases constituted an express novation and replacement of the 2012 Leases. SWN asserts that the Court in *Rebel Distributors Corp* found that the agreement itself expressly revealed the desire of the parties to effect a novation where it provided that it was "an express novation, and substitution and replacement" of the prior agreement. Thus, according to SWN, even if an obligation to restore Plaintiffs' property arose under the 2012 Leases, that obligation was extinguished, and all rights and obligations of the parties in this lawsuit are governed by the 2015 Leases and their subsequent assignment to VEP.

VEP responds that SWN paraphrases the language from *Rebel Distributors* such that it would appear that the mere presence of the new leases would constitute a novation of the prior leases, but, in fact, in *Rebel Distributors*, the subsequent agreement had an express statement that the agreement novated the prior agreement. The *Rebel Distributors* court stated:

> Here, the terms of the agreement itself expressly reveal the desire of Rebel and the Clinic to effect a novation. Because paragraph 18 of the 2010 Agreement contains an express declaration that the 2007 Agreement was being novated, the obligations provided for in the 2007 Agreement were expressly novated retroactively by the 2010 Agreement as authorized under the second paragraph of La. C.C. art.1881,despite the similarities in the 2010 Agreement and 2007 Agreement.

144 So.3d at 840.

Thus, according to VEP, there is no basis for SWN's statement that the only "reasonable conclusion" is novation. The novation must be explicit and unequivocal, not the only "reasonable

conclusion", which is a disallowed presumption. VEP further states, that, of even greater significance is the statement made by the *Rebel Distributors* court in Footnote 22 that followed the above quoted language, and which more correctly addresses the present situation:

> The sentence in La. C.C. art. 1881 relied on by the court of appeal, "[i]f any substantial part of the original performance is still owed, there is no novation," refers to a situation where there is no express novation and the performance owed under the initial and subsequent agreements are substantially the same.

144 So.3d at 840, Footnote 22.

VEP concludes that Plaintiffs and VEP agree that SWN is the party responsible for the restoration of Plaintiffs' property; however, SWN is attempting to "switch blame" to VEP after sitting on the restoration obligation for almost five years. VEP further asserts that the equities in SWN's argument approach the absurd since the assignment to VEP is dated July 12, 2018, and the 2015 Leases expired under their terms five days later.

The Court finds that SWN has failed to carry its burden of establishing that a novation occurred. "Novation is the extinguishment of an existing obligation by the substitution of a new one." LA. CIV. CODE art 1879. "Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation." LA. CIV. CODE art 1881. "Novation takes place also when the parties expressly declare their intention to novate an obligation." *Id*. Thus, "even if a new performance or a new cause is not substituted, a novation takes place if there is an express declaration of the parties to that effect." *Id*. at Revision Comments—1984, comment (d). "The determining factor in deciding whether a novation has been effected is the intention of the parties." *Placid Oil Co. v. Taylor*, 325 So. 2d 313, 316 (La. App. 3 Cir. 1975) "The intention to novate may be shown . . . by

the terms of the agreement itself." *Id.*; *see also Bares v. Stone Oil Corp.*, 510 So. 2d 102, 109 (La. App. 3 Cir. 1987) (same).

Here, there was no express intent, nor language in the 2015 Leases, that indicated a novation of the obligations that arose under and were presently existing from the 2012 Leases. Thus, there could not have been a novation presumed by the execution of the 2015 Leases, as such a novation must be clear, explicit and express. There is no indication that any such language was ever agreed to by the parties, and therefore, there was no novation of the obligations under the 2012 Leases. SWN remained bound by the obligation to restore the Plaintiffs' property which arose under the 2012 Leases

The Court will nevertheless next consider, assuming *arguendo* that the 2015 Leases did novate the 2012 Leases, whether the Assignment operated to relieve SWN of its obligation to restore Plaintiffs property to VEP.

### 3. Did the Assignment transfer the restoration obligation?

As indicated, above, the 2015 Leases stated**,** "[i]f Lessee transfers its interests hereunder, in whole or in part, Lessee shall be relieved of all obligations *thereafter arising* with respect to the transferred interest." [Doc. No. 14-10, at ¶ 10] (emphasis added).

Thus, only those obligations arising after the date of the Assignment, would be released from liability. The Court has found that the obligation by SWN to restore the property arose prior to the expiration of the 2012 Leases. In addition to the letter Plaintiffs sent to SWN in 2015, Plaintiffs made a second demand for restoration on SWN by letter dated June 10, 2018, over a month prior to the Assignment to VEP. [Doc. No. 20-12]. Any reasonable interpretation of these facts clearly shows that SWN was on notice and had prior demands made on it for the restoration of the property prior to the Assignment to VEP.

Therefore, the Court finds that the obligation to restore the property arose well before the assignment to VEP, and, was not an obligation "thereafter arising."

## III. CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Plaintiffs [Doc. No. 19] is GRANTED, and Plaintiffs are entitled to Judgment finding SWN liable for the restoration of Plaintiffs' property. Additionally, the Motion for Summary Judgment filed by VEP [Doc. No. 21] is GRANTED, and VEP is found to not be liable to Plaintiffs for the restoration of their property. Finally, the Motion for Summary Judgment filed by SWN [Doc. No. 14] is DENIED.

Monroe, Louisiana, this 14th day of December, 2020.

,

                                               **TERRY A. DOUGHTY**
                                               **UNITED STATES DISTRICT JUDGE**